All right, I see Ms. Hill and we'll wait for Mr. Leggins. He was there a few minutes ago. There he is. All right. We have both counsel on the screen, Ms. Hill you may proceed. Thank you, Your Honor, and good morning. I am Angela Hill. I am representing appellant David Bridgewater in this appeal. Mr. Bridgewater is currently serving a term of imprisonment in the Bureau of Prisons at a facility that has had a series of COVID-19 outbreaks. He has several serious health conditions, including HIV, type 2 diabetes, high blood pressure, asthma and obesity that have all been identified by the CDC as disposing one to severe illness, including death. If he were to contract COVID-19, Mr. Bridgewater did file a compassionate release motion in the district court, arguing that these circumstances constituted extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. 3582. The district court denied his compassionate release motion, arguing or finding that he had waived his right to file the motion in his plea agreement. The district court also denied the motion on the merits. So, Ms. Hill, I want to just ask you, actually, you know, you emphasize a lot the waiver issue. But given the fact that the district court reached the merits, I'm not sure how far that gets you. I mean, my question on the waiver is whether compassionate release actually involves a change in any aspect of the conviction or the sentence. So I'm looking at some memoranda that the attorney general has put out and some other coverage where he describes compassionate release, which typically means you move the location of your imprisonment from the prison to home confinement. And there's actually an indication that people who have been so moved in connection with COVID-19 may get moved back into the prison again once the pandemic is declared to be over. So if it's really just like moving you from prison A to prison B, the courts have no authority over that anyway. That's all up to the Bureau of Prisons. So I wonder to what extent this is a good match, you know, these waivers of, say, 2255 or appeals or other sorts of things. Are they a good match for compassionate release? And I may misunderstand what your question is. I'm just wondering, does this waiver cover something that really effectively just changes your place of incarceration? So my understanding from whenever I do read the motion and from what I'm saying is the waiver does say it waives the right to seek a modification. Right, but is this a modification of the sentence or is the better analogy to moving you from, you know, a medium security prison to, you know, a low security prison? And I'm wondering if, are you describing the home confinement program possibly? It is the home confinement program, but it also has been analogized to these compassionate release questions. Okay, okay. And I mean, I guess I am not following exactly what you're saying. And I do apologize for that. Judge Wood is suggesting that the waiver simply does not apply by its text to this proceeding. And that's an interesting problem. The waiver does include the language, contest any aspect of the conviction or sentence in any type of proceeding. The two ennies there look pretty broad, but it's maybe a question we need to engage. And I think, and I, you know, I hate to argue with the government's point. The government's, and I am not arguing the government's point necessarily, I do believe the government was wrong on this point. But I think what the government or the court relied on was the right to seek a modification of any aspect of the conviction. But just to clarify, finally, and then I'll drop this until Mr. Liggins comes up. But courts are not empowered to tell the Bureau of Prisons where to put somebody. They can recommend a facility, they can do that. But in a waiver such as this, if you're talking about something that's beyond the power of the court, the way I would read the language of the waiver is not purporting to include things that the court can't affect. If it's a 10-year sentence, it's a 120-month sentence, it's a 120-month sentence. Where it gets served, whether it's partly in home confinement, whether it's in a low or medium security prison, all sorts of other things are up to, of course, subject to statutory restrictions up to the BOP. So I just wondered, I mean, my big question in my mind was, does this waiver language even address compassionate release, home confinement programs? But then my other point to you was, suppose it doesn't, you still lost on the merits in the district court. Yes, and I apologize, I had not considered the point that you had brought up there before. So I'm not prepared to address that, and that is an interesting point that I had not thought before. I think the strongest point that I had raised on the briefs that I would like to address is the point that we had addressed in the briefs was the congressional intent in the public policy argument on the contractual principle that the Supreme Court has in Brooklyn Savings Bank v. O'Neill said that one cannot waive a right that would thwart the legislative policy, which was designed to effectuate. I think here, finding that compassionate release can be waived would be contrary to that principle, especially since it was Congress's specific intent in the First Step Act to take the compassionate release gatekeeping role away from the Department of Justice. It made specific findings that the Department of Justice was inept at administering the compassionate release program, and that's why it gave this ability to defendants to file its own motions. I mean, Department of Justice was administering this program, but there were findings that only a very few inmates were actually being released under the program, and that it was administered so poorly that inmates were dying while paperwork was being processed. So I think based on those, if we include compassionate release waivers and plea agreements, we're effectively letting the Department of Justice come back and take that power away, or take that power back, effectively, when Congress specifically said, no, we don't want the Department of Justice in control of this program. Congress knows how to create unwaivable rights, such as under the Fair Labor Standards Act, right? Yes. I don't see any such language or even legislative history in this case. And I think that's correct, but I think there's also been other cases in other courts where there's not been specifically where Congress specifically has said that this right is unwaivable, and I think that's what the Supreme Court has said whenever a right is unwaivable. What do you have in mind? When it would be contrary to the congressional intent. What case do you have in mind? So in the D.C. Circuit, whenever FOIA rights were to be waived, so I was looking at the case of Price v. U.S. Department of Justice, and that would be 865 F3D 676. And there the D.C. Circuit refused to enforce the FOIA waiver in a plea agreement on public policy grounds where Congress did not specifically say that FOIA could not be waived. So that would be something similar to that. And there's been other interests. I mean, if you were to look at in a state case where just as an example, we have the Florida Supreme Court case of Frank v. Bowers that I had cited to in the brief, where just the Florida Supreme Court had refused to enforce a contractual provision where it had found that the Florida legislature had emphasized the public need to address a medical malpractice insurance crisis, and it had not specifically said in the Congress or its legislature had specifically found that it could not be waived. So I think there are examples there. And I don't think in the Supreme Court case of Brooklyn Savings Bank v. O'Neill that it has said that they specifically say that. You also, in Town of Newton v. Roomery, the Supreme Court did acknowledge that a promise is enforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harm by enforcement of the agreement. And in that case, while the Supreme Court did come out on the other side and say that the waiver, you know, that the on the other side and say that the right was waivable, nowhere in there did it specifically say that Congress that I recall in that case, I don't believe it said that Congress had to specifically say that that right had to or was waivable. Or I'm sorry, could be could not be waived. And it is true. And the government's argument is that defendants regularly waive statutory and constitutional arguments. And but I do think the nature of this is different than other sentence reduction motions that have been before this court before, such as the retroactive guideline amendments, just by the nature of intended to do with them through the First Step Act was to remedy the administration of this program. Now, your time has expired. I'm sorry, your time has expired. OK, thank you. OK, thank you. Thank you. Thank you, Your Honors. My name is Tom Leggins and I represent the United States in this appeal. The I guess I will start with the question that the panel had regarding really the interplay between, I think, the CARES Act and Section 3582 C. Judge Wood's question went to the implementation, I think, of the CARES Act. And there is a procedure now whereby which Mr. Bridgewater also availed himself of where inmates can seek release from imprisonment to home confinement. And if they're found eligible for that, at the end of that, they may be returned back to incarceration. This appeal does not involve the CARES Act. In fact, I don't believe I think courts that have addressed that issue have said there is no appeal. From the Attorney General's and by extension, the BOP's implementation of the CARES Act. What the defendant is moving under is not any decision that was rendered under the CARES Act. He filed a petition or a motion in court subject to 30 subsequent to 3582. And what he is asking for is the court to grant him an outright release from prison based on compassionate release. And the reason that is covered in this case, the reason it is covered in the plea agreement is because Section 3582 is the label of that subsection is modification of an imposed term of imprisonment. So what he is seeking is a relief pursuant to 3582. And if he wants relief under the CARES Act, I believe he's already sought that and it's been denied. And that's unreviewable by this court is the government's position. So it's 3582 or nothing for the defendant. And you see it as release or nothing under the First Step Act actually is what changed. Yes. Yes. That's what I would. That is my position that 35, 3582 C, which implements the First Step Act is what he is moving under. And it's all he can move under and in a in through the judiciary. It's the only thing he can seek review of. And because 3582, the provision that is under his term modification of a term of imposed sentence, then what he is seeking is a modification of his sentence. And that's all the relief that he can seek in the district court. And so our position is, is this comes under the express terms of the waiver. In this case, we agreed that we would forego a 10 year mandatory minimum sentence possibility for this defendant in exchange for his promise not to seek a modification of a sentence. Was it contemplated by the parties that two million people worldwide were going to have died, which I just saw has happened at this point? I mean, isn't there some kind of failure to have a meeting of the minds when this clearly bans appeals, it bans 2255s, it bans lots of things. But how could the parties have had this in their contemplation? Your Honor, I, you know, I, I will freely concede that nobody in March of 2019 could foresee that that a that the COVID would hit a year later. However, the, the, in our view, and we argued extensively in our brief, the pertinent question here is what is, what do you do with the change of circumstances in this context? And what we have is a defendant who says, I agree, I, I, that I am not going to seek a modification of my, my sentence. There is no dispute that there, the rule 11 colloquy here was sufficient. And our, our position is that the rule colloquy rule 11 colloquy is dispositive because this court has said that if a defendant enters a knowing involuntary plea that complies with rule 11, the fact that an unanticipated risk later materializes does not trump the voluntary nature of the plea and waiver. And there's a, we cite a long line of cases from this circuit that say that exact thing, that the fact that an unanticipated circumstance arises that may have made your deal not as attractive as it looked at first blush does not allow you to then violate the waiver provisions of your agreement. Usually there's an ineffective assistance of counsel exception to these waivers since if somebody received ineffective assistance of counsel, then the whole thing falls down. Now, of course, that would re-expose a defendant to the 10-year mandatory minimum, to, to the other things that the government could have done. It really just resets the clock if that ineffectiveness were found, right? There is, there would be a, I theoretically, a, the way you would get at this would be if the advice of counsel was somehow under a Strickland standard. Right. That's what I meant. That's what I meant. That's the one kind of 2255 you can bring. Understanding that we don't pick and choose among different parts of a plea agreement. It's either stands or falls on, in its entirety. So the government wouldn't be stuck with, you know, a shorter sentence, but still the same concessions the government made. I don't think you can get to the Strickland issue in the context of this case because you weigh Strickland on the basis of what the advice was at the time the plea was entered. And it goes back to your question of nobody foresaw a pandemic was going to come a year later. And it would have been ineffective in this case for counsel to advise Mr. Bridgewater not to accept the deal because the government was willing to with go a mandatory with forego a mandatory 10 year sentence. And it would have made no sense for his counsel to say, well, you know what, you need to go ahead and take the extra 10 years because a pandemic might get in a year. And then where would they be. So, the really, you know, the in the council council briefly I think toyed with the idea of invoking Strickland in the district court, they raised it. And I think I think that foregoing it was was advised. I don't see how you can get to a Strickland problem here, given that you engage it at the time the plea was entered. Leggings Can I ask you just an elementary question to make sure we're on the same wavelength here, which is suppose there had been no waiver provision in the plea deal. Suppose you've gone forward and a much longer sentence 10 year mandatory minimum or maybe a 20 year sentence had been imposed in that case. Compassionate release under the First Step Act would be available, correct. That is correct. That can that can trump anything. Yes, I think the opening clause of the First Step Act. I think it starts in any case. So, I, I think our department has construed that as meaning that the mandatory minimum. It doesn't matter. Okay. And briefly just, I would like to with my remaining minute. Council invoke the Brooklyn Savings Bank case, I don't believe that is applicable here. For the reason cited by Judge Hamilton, the, it involved a civil case in a, in a statute, the Fair Labor Standards Act, which the Supreme Court and mezzanotto footnote for mezzanotto said, Brooklyn Savings Bank doesn't apply to this plea agreement criminal plea agreement context because it involves a statute where there was a, an overt intent not to allow a private cause of action or private waivers of of the Fair Labor Standards Act action present. And if you look at the, the areas for waiver of her courts have said criminal defendants cannot enter into waivers of these particular rights. They all involve the same things for there is a public policy, a public good at stake, like this speedy trial act. And it's cannot waive the provisions of the speedy trial act the government can't waive the provisions of the speedy trial act, because there's a public interest embodied in the statute. The government can't wait for you, because there's a public interest in a defendant can't wait for you because there's a public interest in the FOIA statute, there is no such public interest in whether or not a defendant gets a modification of their sentence under the compassionate release provisions embodied at 3582. And for all of those reasons, we would ask the court to affirm the district court. All right, thank you very much. Ms. Haley, your time had expired, but you may have an additional minute if you have some closing thoughts. I didn't get a chance to address the merits. So I would briefly address that I think after reviewing the court's order, I think there is concern that the court mistakenly considered or made some mistakes in the merits review. I have am of the opinion that the district court considered the compassionate release motion that the district or that the appellate filed in the first instance, instead of the second compassionate release motion. I would note that on page nine of the court order, she referred to an allegation that the appellant made only in the first compassionate release motion, and she ignored many of the allegations that were made in the second compassionate release motion. And it really leads me to the opinion that she mistakenly referred to the first compassionate release motion whenever she was ruling on the second compassionate release motion. In any event, it's clear that she was relied on erroneous information and ignored arguments that were raised in the second compassionate release motion. So even if we do get past that plea agreement argument and get to the merits, I think that we do get past the merits argument, and we would ask for the court to reverse and remand. Thank you, Your Honor. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement, and that concludes our argument session for today. The court is in recess.